**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VICKI LYNN SMITH, as Mother and
personal representative of
the estate of James Thomas Howard
IV,

        Plaintiff-Appellant,

  v.

SEARS ROEBUCK AND CO., a New
York corporation; THE
CHAMBERLAIN GROUP INC., an
Illinois corporation,

        Defendants-Appellees.

No. 06-6151
(D.C. No. CIV-04-1271-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **McKAY**, Circuit Judges, **BRORBY**, Senior Circuit Judge.

Plaintiff Vicki Lynn Smith appeals from the district court's order excluding

the testimony of her expert witness under Rule 702 of the Federal Rules of

Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and for

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

summary judgment in favor of defendants Sears Roebuck and Co. (Sears) and The Chamberlin Group Inc. (Chamberlin).[1] She also assigns as error the court's denial of her motions to compel discovery. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

In April 2003, Ms. Smith's four-year-old son Tommy, was killed when he was trapped under a garage door that was installed with a garage door opener manufactured by Chamberlin and sold by Sears. At the time of the accident, the opener had been in use for twenty-four years. By the time her lawsuit was filed in October 2004, the garage door itself had been badly damaged and the opener had been dismantled. At some unknown time, numerous component parts of the opener were lost or misplaced, and could not be produced for inspection and testing during discovery.

---

[1] Although Ms. Smith claims that she is appealing from the grant of summary judgment in favor of Sears and Chamberlin, she offers no argument in her opening brief that the district court's decision was error assuming that its expert-witness ruling was correct. Therefore, the issue is waived. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). In her reply brief, Ms. Smith addresses the issue for the first time, however, the discussion comes too late because "[i]t robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Regardless, we have examined the authorities relied upon by the court and cited by Ms. Smith in her reply, and agree that without the testimony of an expert witness, she could not prove her claims under Oklahoma law for products liability (defective design) or negligence based on failure to warn.

To prove her claims for products liability and negligence, Ms. Smith identified Gene Litwin as an expert witness to testify that the garage door opener was defectively designed and that this design defect caused the accident. Mr. Litwin also opined that the warnings contained in the Owner's Manual were inadequate. Following discovery, Sears and Chamberlin moved to strike Mr. Litwin's testimony, challenging the reliability and relevance of his testimony and his qualifications as an expert witness. They also moved for summary judgment.

EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence codifies the Supreme Court's decision in *Daubert* and sets forth the standard that expert testimony must meet to be admissible in evidence. As part of its gate keeping function, and in addition to determining whether the proposed expert is qualified to offer an opinion, the trial court must also determine whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Reliability under *Daubert* is determined by looking at "whether the reasoning or methodology underlying the testimony is scientifically valid," 509 U.S. at 592-93, and relevance is determined by "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593.

In determining the reliability of expert testimony, there are several nonexclusive factors that the court may consider, including (1) whether the expert's theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error of the technique or theory, and (4) the general acceptance of the theory or technique. *Id.* at 592-94. *Daubert* itself, however, recognizes these factors are not definitive, and a trial court has broad discretion to consider other factors in determining the reliability of the proffered expert testimony. *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (concluding that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").

The party sponsoring expert testimony

need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) (internal quotations and citations omitted).

On appeal,

we review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the

first instance. We then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion. . . . The trial court's broad discretion applies both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability. . . . A court does not abuse its discretion unless its decision is arbitrary, capricious, whimsical or manifestly unreasonable, or unless we are convinced it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (internal citation and quotations omitted).

Ms. Smith asserts the district court misapplied *Daubert* and Rule 702 to the undisputed facts. We disagree. Specifically, Mr. Litwin's opinion was that the garage door opener "was prone to failure because in ordinary use [the reverse mechanism] would rarely be actuated and the mechanism would tend to get inoperably stuck when not actuated frequently." Aplt. App., Vol. II at 736. The court found Mr. Litwin's opinion failed to meet the standards of reliability under *Daubert* and Rule 702 because, among other things:

- He did no testing to substantiate his theory.

- His opinion ignored Ms. Smith's testimony that she had tested the reverse mechanism of the garage door opener at least three to four times a year from 1996 (when she moved into the home) through the date of the accident in April 2003, thus eliminating lack of use as a cause of the failure.

• He could not rule out any of the numerous alternative causes for the accident, including the fact that mechanical devices do not last forever and are subject to failure without warning, the motor in the garage door opener had a weeping capacitor, the opener may have not been properly adjusted, the garage door may not have been properly lubricated, and the old and worn motor may have had insufficient torque to activate the reverse mechanism.

This opinion testimony is inadmissible because it is "connected to the existing data only by the *ipse dixit* of the expert." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238 (10th Cir. 2004) (holding that although an expert does not have to categorically exclude each and every possible cause of an accident, "an inference to the best explanation for the cause of an accident must eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable").

In addition to challenging the reliability and relevance of Mr. Litwin's expert testimony, Sears and Chamberlin also challenged his qualifications as an expert witness. Even though the district court found Mr. Litwin was qualified to render expert testimony, Ms. Smith contends the court unfairly described him as having "many of the attributes of an 'expert for hire' rather than someone with independent credentials in the field of engineering." Aplt. App., Vol. III at 1413. According to Ms. Smith, this description "colored [the judge's] remaining

-6-

analysis and overall conclusion." Aplt. Opening Br. at 8. Setting aside the fact that this is not a legal argument, but simply a quarrel with the words used by the judge in ruling in her favor, our review of the record convinces us this comment was properly part of the court's gatekeeper role, which requires it to "adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

Next, Ms. Smith argues the district court should have applied Oklahoma's evidentiary rules to determine the admissibility of Mr. Litwin's expert testimony. Plainly, this is not the law, and she offers no support for this proposition other than this is a "case involving Oklahoma law, the Oklahoma market place, and an Oklahoman child." Aplt. Opening Br. at 21. We similarly reject her argument that a court should be more liberal in allowing expert testimony in a case "where a child has lost his life." *Id.* To the contrary, "[r]egardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dodge*, 328 F.3d at 1222-23 (quotation omitted). In fact, one could just as easily argue for heightened scrutiny in a case such as this where a jury could be swayed by

emotion. Regardless, the underlying facts of a case do not call for an uneven application of *Daubert* or Rule 702.

As to Mr. Litwin's expert testimony concerning the inadequacy of the warnings in the Owner's Manual for the garage door opener, the district court found that this testimony was irrelevant under *Daubert* and Rule 702 because the reasoning and/or methodology used by Mr. Litwin was not only unreliable, but irrelevant because it did not apply to the facts in the case. The reason why it did not apply to the facts in the case is because under Oklahoma products liability law, a plaintiff must establish, among other things, that "the failure to warn caused the injury." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1332 (10th Cir. 1996). Where, as here, the undisputed evidence is that Ms. Smith never read the Owner's Manual, she cannot establish that the failure to warn caused the injury.

Our review of the record convinces us that the district court properly performed its gatekeeper role and its decision to exclude Mr. Litwin's expert testimony as unreliable and irrelevant was not an abuse of discretion.

MOTIONS TO COMPEL

Ms. Smith also argues that the district court wrongly denied that portion of her motions to compel that requested Sears and Chamberlin to "disclose lawsuits, complaints or records of other similar incidents involving allegations of injury to persons using the Chamberlin/Sears [garage door openers]." Aplt. Reply Br. at 23. But as Sears and Chamberlin point out, Ms. Smith never identifies the specific

interrogatories or document requests she contends were improperly resolved by the court.

Our examination of the record reveals that Ms. Smith's Interrogatories Nos. 4 and 5, requested the information she seeks on appeal. Those interrogatories asked Sears and Chamberlin:

> **Interrogatory No. 4**: Have you ever received notice of any accidents or injuries involving the Product or Similar Openers from the time it was originally manufactured and sold to the present time? If so, please describe each such injury or accident of which defendant has been notified.

> **Interrogatory No. 5**: Has a claim or lawsuit ever been filed against [you] wherein a person claimed that he (or a person he brought the lawsuit for) was injured or killed as a result of using or coming into contact with the Product or any Similar Opener? If so, please list the name and address of each claimant and give a complete description of the claim or lawsuit. Also, please state the name and address of any person whom you know or you have reason to believe has sustained any injury while using

Aplt. App., Vol. I at 53.

However, Ms. Smith did not challenge either Sears' or Chamberlin's responses to Interrogatories 4 or 5 in her motions to compel. *Id.* at 28-44, 143-61. Therefore, she cannot raise this argument for the first time on appeal. *See, e.g., O'Connor v. City & County of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990).

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge